WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nadia Drake,<br><br>    Plaintiff,<br><br>v.<br><br>Salt River Pima-Maricopa Indian Community,<br><br>    Defendant. | No. CV-19-02957-PHX-MTL<br><br>**ORDER** |

Before the Court is Defendant Salt River Pima-Maricopa Indian Community's (the "Community")[1] Motion to Set Aside Default. (Doc. 15). Also before the Court is the Community's Motion to Dismiss. (Doc. 14). The Motion to Dismiss rests on three bases: lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and insufficient service of process under Fed. R. Civ. P. 12(b)(5). (*Id.* at 1).

For the following reasons, the Court grants both the Motion to Set Aside Default under Rule 55(c) and the Motion to Dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction because of the Community's sovereign immunity from suit.

**I.    BACKGROUND**

Nadia Drake is the Plaintiff. Her Complaint alleges that she suffers from severe anxiety, Post Traumatic Stress Disorder, and panic attacks. (Doc. 1, at 2.) Her service dog helps her cope. (*Id.*) Drake went with her service dog to the Community's Talking Stick

---

[1] The United States Bureau of Indian Affairs recognizes the Community as a tribe for federal law purposes. *See* 82 FR 4915-02 (January 17, 2017).

1 | Casino and Resort (the "Casino") in July 2018. (*Id.*) She alleges that the Casino's employees told her that the service dog had to go – even when Drake and a companion tried to "retrieve their bags to provide [the dog]'s service credentials" to Casino staff. (*Id.*) Drake says that this confrontation with the Casino employees caused her to suffer a panic attack. (*Id.*) The Complaint goes on to allege that Casino employees (and thus the Casino itself under *respondeat superior*) violated Title III of the Americans with Disabilities Act (the "Act" or "Title III"), which deals with places of public accommodation. (*Id.* at 3-4); 42 U.S.C. §12182. Drake also claims that the Casino and its employees intentionally and negligently inflicted emotional distress upon her. (Doc. 1, at 4-5.)

## II. SETTING ASIDE DEFAULT JUDGMENT

The Community contends that Plaintiff failed to make effective service of process under Fed. R. Civ. P. 4(m). (Doc. 15, at 1.) Plaintiff nonetheless sought an entry of default against it. (Doc. 11.) The Clerk of Court entered default on August 22, 2019. (Doc. 13.) The Community then filed a Motion to Set Aside Default against the Community on August 28, 2019. (Doc. 15.)

The Court may set aside the entry of default if good cause is shown. Fed. R. Civ. P. 55(c). In determining whether good cause has been shown, the Court considers three factors: (1) whether there was culpable conduct on the part of the Defendant; (2) whether any meritorious defenses are available; and (3) whether there is any prejudice to the plaintiff. *See Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011). Although the party seeking to vacate judgment bears the burden of showing that these factors favor setting aside the default, that burden "is not extraordinarily heavy." *See United States v. Aguilar*, 782 F.3d 1101, 1107 (9th Cir. 2015).

### A. Culpable Conduct

"A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (emphasis in the original), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). Intentional conduct,

in this context, must rise to the level of conduct which is willful, deliberate, or done in bad faith. *Id*. at 697-98. Thus, the behavior must be inexcusable.

Here, the Court finds that the Community's behavior was not in bad faith. While it did have actual notice of the suit, the Community took the position that it had not yet been properly served. (Doc. 15, at 4-6.) Additionally, the Community asserts that it is immune from suit in this case. (Doc. 14, at 10-13.) The Community's conduct does not rise to the level of inexcusable, culpable conduct. This factor weighs in Defendant's favor.

### B. Meritorious Defenses

To establish that a meritorious defense exists, a defendant has to allege specific facts that would constitute a defense. *TCI Grp. Life Ins. Plan*, 244 F.3d at 700. The Court need not conclude that the defendant will prevail on the alleged defense to determine that this factor weighs in favor of setting aside default. *See Apache Nitrogen Products, Inc. v. Harbor Ins. Co.*, 145 F.R.D. 674, 682 (D. Ariz. 1993).

The Community has raised a number of defenses in its Motion to Set Aside Default (Doc. 15) and its Motion to Dismiss (Doc. 14), including improper service and sovereign immunity. This is sufficient to weigh in the Community's favor in the analysis for setting aside default.

### C. Prejudice to the Plaintiff

Given the early stage of the proceedings in this case, and the lack of any significant delay, the Court finds Plaintiff did not suffer significant prejudice.

### D. Conclusion

Based on these factors, and the general preference for resolving cases on their merits, *see O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994), the Court concludes that the entry of default in this case should be set aside.

## III. LEGAL ANALYSIS

### A. Application of Title III to the Community

The threshold inquiry is whether Title III applies to Native American tribes. The Ninth Circuit provided a test for this question in *Donovan v. Coeur d'Alene Tribal Farm*,

751 F.2d 1113 (9th Cir. 1985), and the Eleventh Circuit has applied this test to a case similar to this one.

While Congress may legislate in a way that imposes requirements or grants exemptions to specific groups, it usually legislates with laws that apply generally. *See Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1327 (2016). With respect to tribes, there are three exceptions to the rule of general applicability: first, when applying the law would interfere with internal matters of tribal self-governance; second, when applying the law would run afoul of rights that a treaty guarantees the tribe; or third, when legislative history or other indicia show that Congress did not intend for the law to apply to tribes operating within their territorial boundaries. *Coeur d'Alene*, 751 F.2d at 1116.

In *Florida Paraplegic Association*, the Eleventh Circuit applied the *Coeur d'Alene* test to the Act. *Fla. Paraplegic, Ass'n, Inc. v. Miccosukee Tribe of Indians of Fla.*, 166 F.3d 1126, 1128-30 (11th Cir. 1999). It concluded that the Act is a generally applicable law, in part because one of the statutory purposes is to provide a "comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *See* 42 U.S.C. §12101(b)(1); *Fla. Paraplegic, Ass'n,* 166 F.3d at 1128. As to whether the three *Coeur d'Alene* exceptions apply, the decision noted in particular that the self-governance exception does not apply, citing the commercial nature of the casino and its availability to those outside of the tribe.[2] *Fla. Paraplegic*, 166 F.3d at 1129. The parties here do not argue that a treaty applies, so factor two is not at issue. The last factor is Congressional intent. The Eleventh Circuit noted that a Senate report says that the Act should be liberally construed to promote equal access, so the third exception does not apply. *See id*. at 1128; *see also* S. Rep. 101-116 at 59 (1989). The Court therefore finds that Title III of the Act

---

[2] The Court agrees with the Eleventh Circuit's analysis for purposes of this case; namely, when the plaintiff is a non-member patron to the Casino, the self-governance exception might not be triggered. However, the Court notes that the analysis might differ on other facts. The purpose section of the Indian Gaming Regulatory Act shows that tribal gaming operations are a "means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. §2702. In fact, "tribal business operations are critical to the goals of tribal self-sufficiency because such enterprises in some cases may be the only means by which a tribe can raise revenues." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 810 (2014) (Sotomayor, J., concurring) (internal citations omitted).

applies to the Community.

### B. Sovereign Immunity

Title III of the Act establishes a private cause of action. 42 U.S.C. §12188(a)(1) (*incorporating by reference* 42 U.S.C. §2000a-3(a)). It allows an aggrieved party to file a lawsuit against a defendant who has committed, or the plaintiff reasonably believes is about to commit, a practice prohibited by the Act. *See* 42 U.S.C §12188. That does not, however, end the inquiry in this particular case. As the Eleventh Circuit recognized, the next question is whether Congress waived the Community's immunity from suit by private citizens.

The federal and state governments generally cannot be sued without their consent. This is a bedrock legal principle known as sovereign immunity. The Supreme Court has long recognized this doctrine. *See, e.g.*, *Cohens v. State of Virginia*, 19 U.S. 264, 411–12 (1821) ("The universally received opinion is, that no suit can be commenced or prosecuted against the United States."); *see also Franchise Tax Bd. Of Cal. v. Hyatt*, 139 S. Ct. 1485, 1494 (2019) ("At the time of the founding, it was well settled that States were immune [from suit].").

Native American tribes likewise enjoy sovereign immunity, a "necessary corollary to Indian sovereignty and self-governance." *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, 476 U.S 877, 890 (1986). This immunity respects their unique status as "domestic dependent nations" with "inherent sovereign authority over their members and territories." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.* 498 U.S. 505, 509 (1991). Congress holds the immunity in trust for the tribes. *See United States v. U. S. Fid. & Guar. Co.*, 309 U.S. 506, 512 (1940). As such, Congress may abrogate tribal immunity; however, it must expressly abrogate the immunity in order for it to be effective. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). Courts will not infer an abrogation when Congress has not clearly intended to make an exception to the general rule that tribes have immunity. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of . . . sovereign immunity must be unequivocally expressed in statutory text.").

When a tribal defendant raises sovereign immunity, as is the case here (Doc. 14), the plaintiff bears the burden of demonstrating that immunity does not apply. *See Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987). That may be accomplished by showing either that the tribe has waived its immunity or that Congress has abrogated the immunity with respect to the cause of action that the plaintiff has raised. *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). If the plaintiff does not satisfy this burden, the lawsuit may not move forward because "[s]overeign immunity is jurisdictional in nature." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *see also Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989). Neither the Supreme Court nor the Ninth Circuit have directly ruled on whether Congress, in passing the Act, intended to waive tribal sovereign immunity. As discussed herein, the Eleventh Circuit, when faced with a similar issue, held that Congress did not abrogate tribal immunity with respect to private claims under the Act. *Fla. Paraplegic*, 166 F.3d at 1135. This Court agrees.

Congress has, in the past, manifested its desire to abrogate tribal immunity in an express manner. *See, e.g., Pub. Serv. Co. of Colo. v. Shoshone-Bannock Tribes*, 30 F.3d 1203, 1206 (9th Cir. 1994) (holding that a law that allowed those affected by any requirement of a Native American tribe to, after pursuing an administrative process, seek review in the federal district court). Indeed, Congress abrogated state sovereign immunity expressly under the Act. 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment . . . for a violation of this chapter. In any action against a State for violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity. . . ."). Yet Congress did not do so with respect to tribal immunity. *Fla. Paraplegic*, 166 F.3d at 1131. Immunity for tribes "is not coextensive with that of the States," meaning that abrogating the states' sovereign immunity does not in and of itself abrogate tribal sovereign immunity. *See Kiowa Tribe of Okla.*, 523 U.S. at 756. Moreover, a basic canon of statutory construction teaches that the expression of one type of immunity is to the exclusion of those

which Congress did not list. *See Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another.") (internal citations omitted). In other words, that Congress did not clearly waive the tribal immunity, but did so with respect to the states' sovereign immunity, demonstrates that the Community's immunity should remain intact.

Plaintiff argues that the Court should not dismiss on sovereign immunity grounds because *Coeur d'Alene* allows the Court to apply a broad provision of federal law to a commercial enterprise of a tribe. (Doc. 21, at 2.) But this argument misses a key distinction. That case was not about immunity from a private cause of action. It concerned the federal government's regulatory power to enforce a federal law, the Occupational Safety and Health Act. *See Coeur d'Alene*, 751 F.2d at 1115. Plaintiff's argument also fails to distinguish the line of Supreme Court and Ninth Circuit cases that have held that tribes do not lose their immunity simply for engaging in commercial enterprises. *See Kiowa Tribe of Okla.*, 523 U.S. at 754-55; *see also Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725 (9th Cir. 2008). In her Complaint, Plaintiff acknowledges that Defendant is "a federally recognized Indian tribe doing business . . . as Talking Stick Resort and Casino." (Doc. 1, at 1.) The Court must accept this allegation as true. *See Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 872 (9th Cir. 1992). This fact compels the conclusion that the Casino is an arm of the Community and entitled to the same immunity as for its official acts. *See Allen v. Gold Country Casino*, 464 F.3d 1044, 1046-47 (9th Cir. 2006).

Plaintiff makes another, similar argument by noting that "tribes have to follow federal tax law even though there is no explicit language in regard to its applicability to tribes." (Doc. 21, at 3.) Assuming that tribes must comply with generally applicable federal tax law, that law is inapposite to a case such as this one seeking to bring a private action.

Neither Plaintiff's Complaint nor her response to the Motion to Dismiss satisfy her burden of demonstrating that sovereign immunity does not apply.[3] She has not argued, nor

---

[3] In her response to the Motion to Dismiss, Plaintiff cited a law review note with policy

1 has the Community conceded, that the Community has waived immunity. Nor has she pointed to a clear abrogation by Congress.

The Court, therefore, holds that given the lack of a clear waiver from the Community or Congress, that the Community retains sovereign immunity with respect to private claims under Title III of the Americans with Disabilities Act.

### C. Plaintiff's State Law Claims

Tribal sovereign immunity also applies to Plaintiff's state law claims. A fundamental principle of tribal immunity is that it is "a matter of federal law and is not subject to diminution by the States." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 789 (2014) (internal quotation marks omitted). The Supreme Court has recognized tribal sovereign immunity in contract claims. *See, e.g., Kiowa Tribe of Okla.*, 523 U.S. at 760. The Ninth Circuit has also held that Congressional or tribal abrogation of sovereign immunity is also required for tort cases. *See Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 563 (9th Cir. 2016). The same analysis that precludes Plaintiff's federal claims also precludes her claims under state tort law. Even assuming a cause of action for intentional and negligent infliction of emotional distress applies to tribes—and even assuming that the elements of those torts are met—the Community is immune from suit unless either the Community or Congress abrogates that immunity. The parties do not argue that such an abrogation has occurred. Thus, the Court does not have jurisdiction over these state law claims.

### D. Failure to Serve Properly

In addition to its immunity argument, the Community also moved to dismiss the Complaint on the grounds that Plaintiff did not properly serve the Community with process. (Doc. 14, at 2.) The Community argues that because of the lack of proper service, this Court does not have personal jurisdiction. (*Id.*) Plaintiff, on the other hand, contends that

---

arguments in support of abrogating sovereign immunity. The Ninth Circuit has recognized criticism of the doctrine by the Supreme Court while also noting that tribal sovereign immunity is "firmly ensconced in our law until Congress chooses to modify it." *See Allen*, 464 F.3d at 1046.

she effectuated service upon the Community using multiple means. (Doc. 22, at 1-3.) Given the Court's dispositive holding with respect to sovereign immunity, it need not address arguments concerning service of process.

IV. **CONCLUSION**

Accordingly,

**IT IS ORDERED** that the Motion to Set Aside Default (Doc. 15) is **granted.**

**IT IS FURTHER ORDERED** the Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject-matter jurisdiction, (Doc. 14) is **granted** with respect to all claims because Defendant has sovereign immunity from private suit for all claims in this case.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment dismissing the claims with prejudice.

**IT IS FURTHER ORDERED** that the remaining bases for Defendant's motion are **denied without prejudice** as moot given the dismissal on other grounds.

**IT IS FURTHER ORDERED denying** Defendant's request for oral argument because the issues have been fully briefed and oral argument would not aid the Court's decision. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearing); LRCiv 7.2(f) (same).

Dated this 31st day of October, 2019.

_____
Michael T. Liburdi
United States District Judge